Good morning. May it please the Court, my name is Saad Ahmad and I represent the petitioner in this case. We'll give five minutes of our time to the amici and would have three minutes for rebuttal. Keep track of your time. He's right in front of you. Yes, Your Honor. The board in this case had denied the petitioner's claim on the ground that petitioner, who was a government witness in El Salvador against gang members, was not a member of a social group under the INA. The board concluded that people who testify against gang members in open court are not socially visible and are not a particularized group to satisfy the new requirements set forth by the board in matter of CA. This petition for review should be granted because the board's particularity and social visibility requirements are arbitrary and capricious and are not entitled to Chevron deference. And even if this Court were to conclude that those requirements are valid, the claim offered by the petitioner satisfies them. Counsel, just to, could you clarify for all of us what is the group that you are seeking to identify because the BIA seems to have expanded beyond testifying witnesses to anyone who supports. Are you defining the group narrowly as only ones who have testified? It would be helpful to know what your definition of the social group is, in other words. Thank you. Thank you, Judge Fischer. Yes, Your Honor, our group is witnesses, government witnesses who testified in open court against gang members in El Salvador. I know the board defined the group much broadly, people who oppose gang members, but the social group claimed by the petitioner in this case was based on witnesses who testified in open court. Isn't this sort of the problem that the board was trying to get at? Petitioner gets to define whatever group he wants, or she wants in this case, and, you know, you sort of make up a group. And so the board adopts a visibility requirement to keep the concept of social group from being infinitely manipulable by American lawyers who consider themselves to be the most powerful people in the world. And so the board has to invent a group based just to sort of fit their client's needs, which then makes the whole concept of social group, you know, nonsense. Your Honor, the board ---- I mean sort of nonsense in the sense that it has no core meaning. Well, Your Honor, the board has already provided a comprehensive definition of this term, membership in a social group, in matter of Acosta. Yes, and it goes ahead and refines it. Over time, it finds that as just as we do, as we, you know, in our, let's say, Fourth Amendment jurisprudence, the Supreme Court recently refined the concept of search to apply to vehicles, to GPS devices and so on, as matters change, adjudicative bodies refine their concepts to meet changing situations. And why isn't the court 20 years after Acosta entitled to say, well, you know, we sort of said it in sort of a gross way, you know, sort of a ---- we used broad strokes, but we realize those strokes are not capable of really confining the concept in a meaningful way, so we're going to add some finer detail. We're going to add the requirement of visibility. We're going to add the concepts of preciseness or particularity. Isn't this what adjudicative bodies do? And isn't that the kind of thing that we as a court defer to when we review what the administrative agencies do? It's sort of evolutionary development. Yes. The courts ---- the agencies can change course. The Supreme Court has recognized that. I didn't say change course. You're saying yes, but then you change my question and answer something else. It's not going to help me understand if you sort of say yes and then answer something else. The question I ask is not change. The question I ask is refine. Right. And shape the definition, make it more precise over time. Not change. I didn't say change. Yes. Agencies can do that. And that's what the government is arguing, that particularity and social visibility requirements are refinement or an evolution of the Acosta test. They can do it, but they still have to provide a reasoned and rational explanation for those terms. Well, where is that requirement, that they have to ---- that when they go ahead ---- is that subject to a different test than adoption of Acosta in the first place? I'm sorry, Your Honor, I ---- Well, when they adopted Acosta, when they adopted the definition to begin with, they had certain requirements. Is so the requirement of refinement any more onerous than it was originally? Yes. I would say ---- And what is it that this additional requirement is based on? What case do you get this from? Well, matter of CA was the case in which the board first ---- No, no. You said there is a requirement if they want to refine, there is a heavier burden on the agency than adopting the original definition. I ask you, is there a heavier requirement in making adjustment? You said yes. I said, okay, give me a Supreme Court case that says that. The simple question ---- The Supreme Court case would be Chevron. Chevron and would also be Brand X, the Supreme Court's recent jurisprudence on this issue or not on this issue, but agency actions. And in those cases ---- What in there do you ---- Chevron and Brand X are both deference cases. They're both cases saying we owe deference. Yes. What is it in the language of those cases that you say that they require some sort of additional explanation here? Well, I would say the case that I think fits more closely is Fox News case. In Fox News, the Supreme Court said that agencies can depart from prior precedent or also refine prior precedent, but they must provide an explanation. There is a public interest in making sure ---- I don't think they said refine. They said change directions. They said if an agency changes direction, they have to ---- it has to provide a reason for changing directions for making it. So they said the rule is X, and then they say now the rule is not X. They have to provide a rational reason for changing course. But it may not be a case exactly ---- It can't refine things without going through that test? No. Courts can refine. I mean, excuse me. Agencies can refine. I mean, we are not doubting that. What we are saying is that there must be some explanation. There must be some reasonable explanation. Supreme Court recently admonished the Board and abrogated the statutory counterpart doctrine, for example. Because the Board's reasoning for giving relief to some people and not others was irrational. Can I ask a question? It seems to me that you've spent a lot of time talking about what the social group isn't, but not much talking about what it is. And in particular, I ---- it's your argument that let's leave social visibility as a term out, because visibility seems to have this problem of thinking we have to be able to see it when they're walking down the street. But some kind of social structure or social cognition is not an element that can be relied on additionally? Are you saying it's just irrelevant, or are you saying it's not an essential concern? Your Honor, social visibility is relevant only to the extent that it is important excuse me, it's relevant to establish whether someone has a well-founded fear of persecution. So your argument is that this is Acosta standard and nothing else? It's simply innate characteristics and nothing else? Yes, Your Honor. We believe that the Acosta standard was the first comprehensive definition or standard for membership in a particular social group. But isn't one's instinct that what were they talking about in 1951? What was the problem that the Swedish or Swiss delegate came up with when he added this language? And I have to believe that this was 51, after there had been massive sort of forced famines in the Soviet Union, killing a lot of kulaks, rich peasants. And there was after that the Chinese Cultural Revolution, in which people of certain social backgrounds were targeted, and there were slaves who were targeted, there were serfs who were targeted at various times. Isn't that kind of sociological structure really what was the core of this concern? And how would they fit with the innate characteristics notion? Well, Your Honor, those factors are important. Those factors are important, but not necessary. So you think those groups wouldn't fit? They wouldn't work? Well, they may fit. I would say yes, they would fit, and they may fit. But again, it comes back to membership in a particular social group has to be done on a case-by-case basis. Some groups would qualify. The difficulty with your argument, I think, is that if you go solely to Acosta and in effect you're saying there can be no gloss or patina to it, then basically we could take this courtroom and we could say men and women over the age of 15 attending an embankment argument in San Francisco. Once we've done it, we can't undo that we've been here. And you would have this random collection, and none of us would think, well, all of a sudden that's a social group. So it seems to me that if really what you're looking at is cognizability, the question is are there factors in your view that are permissible to give some texture to cognizability? Your Honor, I agree with you. We are not saying that Acosta is. Acosta was the rule that the Board provided. We are not saying that the Board cannot provide more factors, cannot give more reasons. We are not saying that. What we are saying is that the Board has to provide a rational explanation for those. As Judge Beall, you know, had pointed out, that the Court's requirements of particularity in this Court are inconsistent and often incoherent. It's because the Board hasn't provided much help. Counsel, I was very interested in your opening comments. You said even if we stay with the requirements of particularity and social visibility, whatever those terms mean, that your client is entitled to relief. Yes. And in view of the various decisions from the Board, and I'm not sure how that would work, could you explain why that would be? Well, first of all, Your Honor, there are four main Board decisions, matter of CA, matter of SEG, matter of EAG, and matter of AME. These decisions were post-2006 that tried to explain what these requirements, particularity and social visibility, were. And we believe that in matter of CA, for example, the Board said that non-criminal informants were not members of a particular social group because they were not socially visible in society, to the naked eye. However, the Court also said in matter of CA that if these people had been witnesses in court, then they would satisfy those requirements, matter of CA. In this case, my client was a witness in a murder case. She was in court. Her identity was there for everybody to see, easily identifiable. There's a witness protection law in El Salvador that provides relief to these people. So we believe that my client satisfies the social visibility and particularity standards set forth by the Board in matter of CA. And we believe that if my client, if this Court were to say that the particularity and social visibility requirements are valid, my client still qualifies for asylum on those basis. Is RA in tension at all with CA, in your view? Your Honor, matter of RA is not in tension with CA. It was the same concept. It was a concept that evolved in matter of RA, and then it went into CA. It's a similar concept. Social visibility, whether you look at social visibility in the perception sense or whether you look at it, you know, whether someone is recognizable to, whether a group member is recognizable to naked eye. The point, again, is this. The Board has not even come to a proper definition of what social visibility is. In matter of CA, it implies that it has to be something that's visible to a naked eye. In matter of SCG, the Board says that social visibility is something, you know, that you can see, that, you know, that a gang member, the person who opposes gangs should be recognizable to someone on the street. But then the government argues, and in other cases the Board seems to imply that it's the perception of the group. You know, but either way, our client wins because our client satisfies this requirement in every sense of the word. And that's what my point comes down to, Judge Kuczynski, that the Board cannot even come up with a comprehensive definition of social visibility. It has failed to even come up with anything. It has failed to even come up with a comprehensive definition of the meaning of particularity. In some cases, it says it's the size of the group. Obviously, that that has no significance.  And I'm just going to start picking away on any categorization like that. I mean, in Acosta categorization, it was that there has to be either innate or something that you don't don't require to change. That second category is at least as muddy as the social visibility. Again, leaving aside this notion of walking down the street, that's silly, but something more sophisticated. Why has the matter of Acosta category, and that category has to be there if you're going to work it out, because clearly things like religion and political opinion are changeable, but we're not going to we there's just a basic notion that we're not going to require people to change it. But who knows what that is? That's correct. Yes. What do you mean that's correct? Then you lose. No, no. I think what you're saying is that, yes, the definition has certain amount of subjectivity to it. It's difficult to define. Well, it has a certain amount of flexibility and a certain amount of judgment has to be exercised in applying it. And why, even if the Board hasn't come up with a very good notion of what this social cognizability categorization is, that isn't to say that it couldn't come up with a good enough one, as good as something we're not going to require people to change. Well, Your Honor, I agree with you that, yes, there are judgment calls to be made in cases like this, no question about it. And, yes, there will be certain amount of subjectivity involved in cases. But the thing is, the way I would like the Court to look at this case is that there are filters through the process. Just because someone qualifies as a member of a particular social group does not mean that he's going to get asylum anyway. You still have to show that there's a well-founded fear. In fact, in several cases in this Court, the Court recognized the social group but still said that the person was not eligible for asylum because they failed to establish a well-founded fear. So that's just one part of the test. I think that's why you have to look at this case as a process. Yes, in order for someone to establish membership in a particular social group, they have to first demonstrate that there is a cognizable group. Then they have to demonstrate that, yes, they are a member of that group. And then you have to demonstrate that there is a well-founded fear on the basis of that membership. Yes, so we believe that there are enough filters in the system that it would weed out claims that may not be able to – that may not satisfy the well-founded fear test. But what it comes down to is how do you define it? Well-founded fear is a different test. You have to – I mean, there's lots of well-founded fears of all sorts of things out in the world. But Congress has not chosen to grant asylum for them. You have to be in one of these categories. That's correct. So saying, oh, well, you know, a particular client, a particular applicant may get stopped at some other point in the process just doesn't help us at all. It doesn't – it doesn't – that's not where we are in the process. And I, for one, don't care whether – what happens the next step down the road because that's not before us. The question is not whether your client stays or your client goes, although, you know, that's important to you and to your client. But the question is whether the legal standard here is one that's intelligible and capable of application or whether the Board erred in applying that. What happens down the road is really not – not really relevant at this point. Well, first of all, to give you an example why, you know, these requirements are – you know, these requirements of social visibility in particular are irrational, first of all, the Board has not even explained how the previously recognized social groups would satisfy these requirements. Well, so what? They have not. So they've refined the process. I mean, I know Judge Posner made a big deal of that, but I don't get it at all. Lots of times you – it's not like they said, oh, social visibility doesn't count in those cases and they said now we've changed our minds. What they said, they didn't think about it. They didn't – and you don't go back and run old cases through new filters and see whether they fit. I mean, that's the refused process. It's the duty of the – well, Your Honor, it's the duty of the courts to make sure that agencies work in a fashion that is understandable to the public and to the adjudicators. If agencies cannot even come back – come up with reasonable decisions or guidance to the immigration courts and others, how are they going to do that? They've refined the process. They said, look, we've had some experience with this. Now we think that the process, the definition was too broad, and we're now narrowing the process. Yes, they can refine it, Your Honor, but they have to provide an explanation to the courts. As Judge Baer said in his opinion, the reason why the court here cannot come up with a comprehensive definition of the particularity requirement, for example, because the Board never provided any guidance. It's the Board's job to say, okay, that's what we mean by particularity. That's how it should be applied. And it has to apply the new standard consistently. Well, I don't have any problem. The question is whether or not the Board here adopted the standard rationally and whether it was reasonable in its application. Those are all very forgiving standards that we normally – by which we review agency action. We have to be highly differential. And in this case, I don't see what the problem is. They said, okay, we realize that, as one of my colleagues pointed out, you could say this is a social group right here, everybody that's in the courts from today, but nobody would think this is a social group just because they happen to be here and now have the amusable characteristic of having been in the courts for a while. You have about a minute and a half left of your time if you want to do something other than debate with one member of this panel. Is there anything else you want to tell us in your last minute and a half? Yes, Your Honor. What I'd like the Court to know, I'd like to tell the Court that the Board's particularity and social visibility requirements are inconsistent, they are arbitrary and capricious and should be rejected, and the Court should either – Should be rejected as requirements or should be rejected as alternative requirements or alternative possibilities? So I understand that the United Nations High Commissioner standard would be an either-or. Are you rejecting that? Yes. We are rejecting them as requirements. And secondly, the UN High Council – But as an either-or, it's okay or it's not okay? It's not okay. It's not okay. In fact, one reason why it's not okay is because the UN High Council for Refugees – I misspoke, Your Honor. I understand your question. Yes, under UN High Council for Refugees, yes, social visibility could be an alternative means for someone to get asylum, but it should not be part of the ACOSTA test. Mr. Conlon, may I ask you a question? Thank you very much for mentioning my opinion. It really wasn't an opinion. It was a concurrence. But let me ask you this. What do you want us to do? What relief do you seek? Do you seek just Mr. Enriquez-Rivas to be found to meet social visibility and particularity, or do you seek us to remand to the Board of Immigration appeal, and if so, under what circumstances? Thank you, Judge Bea. Yes, we want justice for our client, and yes, this Court would – this case would satisfy the social visibility and particularity requirements as well. But what we want this Court is to reject the particularity and social visibility requirements, because this is a great opportunity for this Court to, you know, fix the mess that the Board has created. If the Court would like, they can do what the Third Circuit did, is to send this case back to the BIA to define or to give them the opportunity to explain these requirements, reconcile with the prior case law, or also – What is Ms. Enriquez-Rivas' present situation? Is she in custody or is she on parole? Your Honor, she is in court right now. She's present in court, and she's not in custody. My time is winding down. I want to make sure that the amici get their time as well and hopefully get two minutes for rebuttal. Okay. Thank you. Thank you. Kenneth Shanmugam for Amica Center for Gender and Refugee Studies. May it please the Court, it is a fundamental principle of administrative law that when an agency changes its position on the interpretation of a statute, it must provide a reasoned explanation for the change. In adopting the social visibility and particularity requirements, the Board of Immigration Appeals made a change. Well, did it now. Did it now. It did make a change. No. I think you're relying on FCC v. Fox Television, right? Yes, that's correct. Well, it's quite clear there that what it's talking about is a situation where the agency recants an earlier position. And they haven't done that.  Well, I'm not saying that the agency goes from saying that the test is A to a situation where to saying that the test is not A. But this is a situation in which the agency went from taking what was a definitive requirement, the Acosta immutability requirement, and adding two additional requirements to that requirement. Well, given that that's a case. Suppose the Acosta requirement was the requirement. Would you not be arguing or would somebody not be arguing, as I noticed that Dean Burzon has said, that there should be a narrow and that there should be an additional at least an additional or maybe an alternative standard, something like this social perception notion? If. Doesn't the fundamental innate standards thing have its own problems? Judge Burzon, if there are problems with the immutability standard, and we think that the immutability standard is fine and has worked well for many, many years. But if there are problems with that standard, it is incumbent on the Board to articulate what those problems are in the process of adopting new requirements. Instead, what has taken place here is that the Board has adopted these new requirements, essentially subsilentio. Now, the government argues that this is a gradual evolution. We think that it was a clear break and it was a clear break that was manifested in the CA decision. And what case do you have supporting the view that when there is a gradual evolution as opposed to a clear break? I mean, let's say we disagree with you and agree with the government. Do you have a Supreme Court case saying that they need a clear explanation? Well, the Supreme Court cases, Brand X and Fox, both say that there has to be a reasoned explanation once there has been a change. Now, to be sure, a change can take place gradually. But regardless of whether the change takes place gradually or abruptly, at the end of the day, the standard here is a different standard from the one that the Board had applied for many years. If it takes two years for a caterpillar to become a butterfly, at the end of the day, the butterfly is still not a caterpillar. And so even if it is true that if you look back with the benefit of hindsight on the Board's decisions, you can see hints of the social visibility and particularity requirements in earlier decisions, the reality is that we have a standard today that is very different from the standard that the Board articulated in the decision in Acosta in the 1980s. Why isn't CA — why isn't the explanation CA perfectly adequate? Well, there really is no explanation as to why a change was necessary. And we really think that that's what the reasoned explanation required. Does a change have to be necessary as distinct from desirable or helpful? Well, the Board can provide reasons as to why they think it's a question. That's a yes or no question. Does it have to be necessary in order for an agency to make a refinement or a change? No, Judge Graber. It can be desirable as a policy matter. And if the agency provides policy reasons — So when you said they didn't explain why it's necessary, you were really sort of saying something irrelevant. Well, necessary from a policy standpoint. I mean, I do think that they don't have to explain why it would be better as an interpretation of the statutory language, because after all, the whole point of Chevron is that agencies have a degree of deference within a zone of reasonableness. But not against the statutory language. I mean, ultimately, their deference is high policy deference within Chevron. It's a statutory interpretation. Well, that's correct. There are two separate issues. Number one, there's the procedural requirement that they provide a reasoned explanation when they make a change. And that's really an APA-type requirement. It's a requirement that the agency not act arbitrarily and capriciously when it makes a change. Of course, there's also a substantive requirement under Chevron that any interpretation they adopt is reasonable. Now, we believe that the social visibility and particularity requirements are outside the zone of reasonableness as a substantive matter. Can I stop you there? Because, you know, we've been talking about Brand X and everything. We're really trying to figure out what's the standard here, what's cognizable. Would you agree that some definition of social visibility could be encompassed in cognizability? Perhaps, but with an important caveat. And what would that caveat be? The caveat is that, first of all, we think that it could not be clearer that social visibility in its literal sense is unreasonable and is an inappropriate interpretation of the statutory language. And the government does seem to be backing it. Let's get rid of walking down the street. Yes. And the government today backs away from that. But you have to have some perception or some aggregation put on the group which has then some, whether you call it social perception, is it the persecutor perceiving them as that? Well, let me sort of try to explain what we think that this social perception test actually means and then offer our views as to whether we think it would be reasonable. The government, as I understand it today, seems to be suggesting that what social visibility actually means is that society perceives the existence of a group. Now, we don't think that that's the case. Well, I think they're brief. The government's brief, though, talks about it in terms of that the persecutor would see this as a group that he, the persecutors, would want to persecute. So it isn't just society in general. It's the persecutors that are, you know, that are causing them to want to flee the country. Right. And, Judge Wardlaw, I think you've put your finger on the problem here. Because there's no doubt that visibility is relevant in a broader sense with regard to the ultimate asylum inquiry, because, after all, if a would-be persecutor does not perceive that the individual who's going to be persecuted happens to possess the characteristic that gives rise to a particular social group, then the persecution is not going to be on account of membership in a particular social group. So we certainly concede that. If a society decides that they're going to kill everybody who is a shop owner because — and which is not a make-believe scenario, because these are dangerous people who were members of the bourgeoisie and they're going to impede the revolution, that group doesn't count? Well, and I want to make sure, by the way, that I don't cut into Mr. Ahmad's rebuttal time, but I do also want to answer the Court's question. So if the Chief Judge is Lee, I think with regard to a group of current shop owners, the Board of Immigration Appeals has suggested that one's current profession fails even the immutability test. Well, you can call them a shop owner, you can call them the dangerous bourgeoisie. That's the perception of them. Well, how about the 1 percent? Well, we believe that wealth actually would qualify. And, in fact, the Board has suggested that wealth would qualify under the ACOSTA standard, because the Board has indicated in its opinion in AME that wealth is a characteristic that an individual should not be required to change. Now, as a practical matter, it's not. Well, that is, to some extent, a normative judgment, as Mr. Ahmad suggested in response to your earlier question. And that's the sort of thing that the Board is free to refine in case-by-case adjudication. So if what the Board had done was to say, look, here's what we think we meant in ACOSTA when we were talking about a characteristic that is fundamental to your conscience or identity, that would be classic case-by-case agency adjudication, the sort of refinement that you were talking about earlier, Chief Judge Kaczynski. That is not what the Board has done here. What would we do if we sent it back to the Board? What would we say to the Board in your view? Well, we believe that this Court should say to the Board that the social visibility and particularity requirements are invalid under Chevron, and that, in fact, they cannot be adopted as a substantive matter because they're outside the zone of reasonableness. But at a minimum – I'm sorry. I was just – sorry, Judge Warbaugh. Well, I want to answer your question, but I do want to just say that at a minimum we think that a remand is necessary so that the Board can provide a reasoned explanation for why it adopted the social visibility and particularity requirements, and also to afford the Board the opportunity to clarify exactly what those requirements mean, because obviously there has been some degree of inconsistency in how those applications in some of the Board's initial hearings. I'm sorry. Just one question. Why couldn't we just grant the petition in this case under In re Acosta and characterize the requirements of social visibility and particularity, which I can't even tell how they're different in this case, as applying to this particular petitioner and, you know, grant the petition on that basis and not feel ourselves bound by requirements that aren't even defined? Well, I do think that for the reasons that Mr. Ahmad suggested in his brief, that the social visibility and particularity requirements are in fact satisfied in this case, and this Court would be free certainly to say that in an opinion and to leave it at that. We'd have to say that the Board was irrational in applying its own standards, right? Well, if we wanted to do that, right? Yes. Well, that is to say that even under the articulation that the Board has offered for those requirements, the requirements are in fact satisfied here. And we certainly would agree that that's the case. But the question is not whether we think it's satisfied. The question is whether we think the Board finding it not satisfied is irrational. Yes. That's the test. We wouldn't just have to – we don't do this de novo. We look at what the Board does and we'd have to say they're so wrong that it's irrational. Yeah. That's certainly correct. But of course, the broader problem is the broader problem. Why don't we hear from the government then? Yes. Thank you very much. Chief Judge Kaczynski, and may it please the Court. I'm Manning Evans. I represent the Attorney General in this matter. Counsel, just to get you started, I don't want to interrupt and tell you, but would you please be sure right at the beginning address what the BIA, what is it we are reviewing in this case, the BIA's decision as they articulated it so that they not only ruled on testifying witnesses, but persons opposing gang members. And secondly, since the Third Circuit has remanded to the BIA to clarify and do all the things that are being argued about today, could you tell us at some point what's the status of the Third Circuit case in the BIA, if they're already going through a process of addressing the issues that are presented in this case? Yes, Judge Fischer. Regarding your first question, the immigration judge in this case is actually the adjudicator who decided or defined the social group as people testifying or otherwise opposing gang members. No issue was taken with that specific definition during the appeal process to the BIA. The government did refer to the government's – I'm sorry, to the IJ's definition at I believe page 8 of the Department of Homeland Security's brief to the board. Then the board reiterated that group as defined by the immigration judge. And in the brief, the opening brief originally filed and considered by the panel here, there was no issue taken specifically with the group defined by the board. But the group had another facet, not only testifiers against gangs, but persons who have been threatened with death for having testified against gangs because Enriquez-Rivas testified that she feared being killed if she had to go back to Salvador and the IJ found favorable credibility, correct? Well, no, Your Honor. I would disagree with that. I mean, the question is how is the group issue defined here? The IJ defined it specifically as people testifying against or otherwise opposing gang members. And afraid of persecution, therefore refugees, because the likelihood of persecution. I mean, without the threat of persecution, the group does not qualify. Well, no, that's not correct, Your Honor. The question about a social group is a freestanding question. I mean, you can have social groups without any regard to persecution at all. The question, when identified by the group. But this is so obvious to me, actually. I mean, if you look at the sense in which this is embedded, they have to be persecuted because they are a member of this group. And we have, for example, imputed political opinion cases, right, in which the perception of the persecutor is dispositive, and it's certainly no reason it seems to me why the perception of the persecutor could not, or the people that the persecutor hates couldn't be the group. Well, I think that the persecutor's perceptions are relevant as a fact in deciding on the whole, looking at everything in the record, whether or not the asylum applicant has proven a social group. But whether or not there is a freestanding social group is an entirely separate issue from whether or not there's persecution. Sotomayor, on that claim, I had a question about the BIA's decision in this case. The BIA in this case did not cite matter of CA, which appears to have held that visibility is recognized by the BIA for those informants who are discovered because they appear as witnesses or otherwise come to the attention of cartel members. So in this case, we have exactly that. We have a witness who has appeared. Why isn't there a problem with the BIA's decision here? Because it looked to its to the wrong versions of its own precedent, given the facts of the case. Yes, Your Honor. Well, first I would acknowledge that actually the Board did cite CA. There's a C generally cite in the Board decision. In the discussion section, though, they talk really about, yes, C generally. But they don't explain it and don't apply it. That's correct, Your Honor. They relied more on SEG, which I think is a much better developed case. But it's not about the same thing. That's true. There was discussion. It is dicta in CA about the visibility of witnesses. And as we suggest in our brief, we think that that is one factor that could be considered. Do you have a literally visible characteristic? Now, we're saying that that is not dispositive. It's not necessary. So are you saying that CA is wrong or not applicable? The paragraph in which the Board refers to the witness becoming visible is a muddled paragraph, and it is best understood as C. What is muddled about the following? Quote, Is that muddled? Well, it is muddled when looking at all the Board's decision as a whole. I think it's very hard to understand that paragraph when you look at everything else. And really, when this Court is looking at Chevron documents. That's the whole point. Oh, I understand. You've actually just highlighted how the Board has, you know, waxed and waned with all these words, and then there's a – when there's a clear word, you're now trying to run for it. I mean, you've come into the brief and saying, you know, literal visibility is not something we're demanding. Would you agree with that? That's correct, Your Honor. Okay. So you've backed away from that aspect of the Board. But then when the Board says there could be cases of literal visibility, which would give you a social group, why would you even need to go further than that? Why would you need to go further than CA? Because there, even if you don't require literal visibility, but you have literal visibility, why doesn't that meet social group standards? Everything else in the Board's decision say that you look at the perception of society and whether or not society sees a group. Well, the society in El Salvador does see this as a special group. In fact, the Salvadoran legislature enacted special witness protection law in 2006 to protect people just like the plaintiff or the petitioner. So it seems to me, and frankly, Judge Graber stole my question. It seems to me when you look at CA – I'm sorry, Kelly. Well, she had a question or two before that, so I was going to get in. But nonetheless, she said it very good. It seems to me that we're done. The Salvadoran legislature enacted the special witness protection. CA says what it does. It seems to me that the Board in this case has no substantial evidence to support its decision. Now, how do you come out with that? Well, Your Honor, I strongly disagree with that, actually. Well, I know you strongly disagree, but give me a good reason. Well, the reason is that the law in question concerns all witnesses, not just witnesses against gangs. It also concerns victims, and it also concerns anyone who is at risk as a result of an investigation or judicial process. It covers a very broad range of people. But we have this case, right? We have this case where the witness did testify, and she was later threatened with death by the group against whom she testified. That is this case. And the problem I see with the paragraph, I think the paragraph in the decision we're reviewing is the muddled paragraph, because it's the one that defines the social group as larger than this case, and then it rejects it without referencing, as Judge Graber pointed out, the law, its previous law, that would have entitled her to relief. CA. Well, Your Honor, there is a whole body of law that comes into play here. The board relied primarily on SEG, and we believe that this is an evidentiary matter primarily. And there is virtually no evidence in this record that the group as defined by the board is recognized as a social group in El Salvador. But the key to that is as defined by the board rather than as defined by the facts. The board has to define it. Top off otherwise opposing gang members from the first sentence in the third full paragraph, and you would have to grant relief. Your argument. The question is whether or not there is evidence in the record that shows that the proposed group is actually seen as a social group in El Salvador. And there's all kinds of evidence that could be committed. Well, wait a minute. You just said the witness protection statute is too broad. It's very broad. Okay. So it's recognized, however, as a social group. Witnesses who testify in court are a social group. Now, maybe the board would like to narrow it down to a group that is, when they testify, at risk of persecution. But if it's a witness protection statute, doesn't that convey the notion that the culture, the political society has decided that witnesses who testify against gang members and other kinds of things who are at risk are a group of people for which the legislation is passed? Your Honor, if that's what the law said, it would be relevant evidence. But it also extends to victims. It extends to anyone at risk as a result of both testimony and investigation. So it's very broad. And so therefore, it's recognized as a group. People who are gay are a large group. People who are suffering from female genital mutilation are a large group of people. And if there was a statute that focused specifically on those concerns, it would be relevant evidence. So if this statute said anybody who testifies against gangs.  Much more. Yes, Your Honor. But if it goes beyond gangs, includes victims who are afraid to testify, because if they do, they'll be hacked to death in their neighborhood for having come forward, which has happened in lots of countries, then, or even in this country, then that's too broad. And yet the whole purpose of this context is to give people refuge from taking actions within their own country that will visit persecution on them. And they come to this country, and we're saying, sorry, but, you know, you don't qualify because the statute that was designed to protect you didn't work too bad. But you're not part of any group. Your Honor, there is a whole range of evidence that could be considered in whether or not an asylum applicant has proven a social group. Because you've excluded as relevant evidence the fact that these people are, in fact, persecuted. I'm sorry, Your Honor? You seem to have earlier excluded as relevant to that question who is, in fact, being persecuted. Well, the mere fact that you're persecuted, it would be a circular definition of social group. Well, not necessarily. I mean, if the persecutor is going after, you know, shopkeepers, then he's the persecutor and the persecutor thinks that's a group. The persecutor could be going after anyone who has any kind of financial ability. I mean, the persecutor may not have in mind the group that's being proposed and that's been considered by the adjudicator. But you're eliminating the persecutor's perception. You're eliminating a statute that, unless it's completely calibrated. So what kind of evidence is that? I'm not eliminating it, Your Honor. This is a factual question and there's all kinds of evidence. All right. There's the persecuted perception. There's legislation. Toboso, the Cuban gay case, was a case where they looked at government policies focused at gays. That was good evidence of a social group. But the legislation here is not focused. But can I understand your – the fact that the legislation protects multiple categories, in your view, undermines the fact that there's a singular category here that's also protected? Is that your position? That's correct, Your Honor. Because what's going on is that if a statute protected people on the basis of race and religion, it would be irrelevant. It's too broad. Well, I'm not saying that it's irrelevant. But there's a whole range of evidence. And I could – I would like to go through that. But the more specific the legislation in the home country is about protecting the proposed group, the more relevant it is in showing as a factual matter. Well, basically, what it is, it's a basically – if you turn states' evidence, as they used to say on television, then we're going to give you some protection here. And you're saying, well, that's too broad. So then I go to the BIA and I say – they say, well, in this case, reliance on people testifying against gang members is merely a shared experience, not a particular social group.  And being at the apex of, you know, gang retaliation is just a shared experience because it falls right into CA, doesn't it? Doesn't it really fall into the situation where the gangs know you're testifying, society protects you, and the gangs perceive you as being opposed to them? Why is – what I'm having trouble understanding is what does this mean? It's merely a shared experience. Your Honor, the question is whether or not the evidence has shown it's anything more than a shared experience. Meaning what? So how does society perceive this proposed group? And I would say you can look at the laws of society, you can look at persecuted perceptions, you can look at – Okay. So let's take each one. How does society perceive someone who goes into court and testifies against a gang? Well, it seems that the legislature in El Salvador, which is some representation of society, has perceived that that kind of person gets protection. Would you agree the person is protected by the statute? I would agree that this person could be protected by the statute. Okay. So is that not some societal recognition of a group of people that deserve protection? Yes, Your Honor, it is. But it is not the group that's defined here. The group here is people testifying or otherwise opposing gang members. And the law in El Salvador is not aimed at that. So the problem is they said it wrong, they just should have taken the group the way it's defined by the legislature? Well, it's an evidentiary question. How does El Salvador perceive the group? And the law of the country is just one piece of evidence. There's a lot of other evidence. Let me change this just a little bit. So I understand your argument. Is it because you are going under the new or the added requirements that the BIA has suggested here, that you can suggest that this does not meet the test for a group in this particular instance? Because it seems to me that this would easily meet the test under the Acosta test. And therefore, if you're really saying that the only reason this doesn't do it is because you have the new, more improved, or refinement, whatever you want to call it, that that's why they don't meet the definition, then I'm saying to you, why is it then I should go for that? Because nobody has explained to me why that should be or why it's better. Why is it I shouldn't say, send that back to the BIA and let them explain it? Because it seems to me it meets Acosta at its easiest. Your Honor, Acosta said that only sometimes will a past shared experience constitute an immutable characteristic that represents something that's fundamental or otherwise fundamental to conscious or identity. So Acosta itself was asking for or left open the need, the possibility that something more has to be shown. All we have here is a past experience. There's no indication that this is fundamental. Under Acosta, there are all kinds of groups that made it that would easily be the same as the group that made it here. Under Acosta, how many things have we suggested would make this particular characteristic? I can't distinguish how they are any different than this particular group provided for by a statute in El Salvador, and maybe it's wide, but so is every other group we approved under Acosta. Well, Acosta is problematic, Your Honor, because the definition of social group that was developed there, they only went far enough to decide that case. Let's take a hypothetical other group, not our actual other group, but a hypothetical how it comes out under your analysis, and that's homosexuals, okay? I mean, apparently in Iran, the President says there aren't any homosexuals. That means they're not perceived as a group? Your Honor, my learned colleagues like to put forward that particular hypothetical. Okay. And the question about invisibility, it's actually, it would be a fact going to social perception. If you can actually show that there's conscious or deliberate attempts at denying the existence of a group, that would be a fact that shows that the society actually recognizes the group. Invisibility would actually be evidence that the social group exists. Well, the society is not cognizant of it. And certainly, I mean, take, you know, the United States 100 years ago. I mean, there wasn't a whole lot of 50 years ago. I mean, there wasn't a whole lot of, you know, notice of homosexuals as a separate group, I mean, when I was growing up. Well, to go back in time presents a very difficult situation. So give me what kind of evidence. You say there's lots of evidence. Let's take that hypothetical. What kind of evidence would work in a situation in which the whole point of this  that it's perceived because of their perception, a knowledgeable, a understandable one that they better locate. So what kind of evidence? I think that to go back 50 years is a very difficult question. Well, yes. Why not? So take my Iran example or some other society in which there is China. Let's take the Christians in Rome. No, no. I'm serious. Okay. They were persecuted. I mean, it's a religious group, so we don't we wouldn't have to worry about it. But let's just put away the religion. You know, they had meetings. They had secret symbols that they exchanged. They had ways of knowing each other. Just like I think Judge Berzah may have been hanging out in the wrong neighborhoods, but there were certainly places 50 years ago where you could recognize gay communities. Yes, Your Honor. And all of that would be relevant evidence as to whether or not the group exists. The extent to which people do associate, it's not dispositive. This Court in Hernandez Montiel got away from the intentional association. But nevertheless, if there is some association that's relevant evidence that a certain group exists. That takes me back to the BIA's opinion in this case. They say we are unpersuaded by the Respondent's apparent attempt to equate El Salvador's enactment of a witness protection law in that country to the definition of refugee under the United States immigration law. Why? You've been very articulate and passionate about saying it was too broad. That's your spin on it? Is that you know something we don't know? Because I don't know why they decided. We've had a very engaging discussion leveraging off of what you've said. There may well be some rationale that the BIA has. But just to simply say we're unpersuaded, we write mem dispos like that. You know, we write we're unpersuaded by the argument. We don't exactly tell you why, but we tell you you're a bottom line. That's all we've got here. And yet you have gone from suggesting that it's irrelevant entirely to say it's worth  And I think there's some evidence that if it were narrowed to this group, it might have been convincing, but we're hearing your argument and your argument isn't the record that we're reviewing. So how do we get around that? Well, you're correct in the sense that it's very important to focus on exactly what the Board said. And the Board was apparently not willing to say simply because this broad group might receive protection in El Salvador that, therefore, they get asylum in the United States. Kennedy, they wouldn't all get asylum in the United States. I'm sorry. As Judge Kaczynski said, there's a subsequent stage. As Judge Baez said, subsequent stage at which you decide whether someone's persecuted on account of that and then gets in. That has nothing to do, some of us say, with what the social group is. It doesn't mean everybody in the social group is going to be eligible to come into the United States because something happens to them. You've got to show that you're persecuted on account of that. And most of the categories under the El Salvador statute may not end up being a basis of asylum. But this clearly is something that regularly leads to persecution. Well, if there was evidence in the record that gangs actually do seek out witnesses, that would be relevant evidence of a social group. Well, that was exactly what Enriquez-Rivas said, and she was believed by the IJ. She described her specific situation. She didn't describe anything more than her specific situation, Your Honor. And so that doesn't prove a social group in the society. So therefore, she's got to go out and do a public opinion survey and find out some more people? Well, she has to come up with some evidence, and that's what the Supreme Court said in Elias S. Rice. You need some evidence to support your case, and there's all kinds of evidence that might be offered. But the problem is, following up on Judge Baer, she gave all the truthful evidence she could about how this particular group was after her and therefore left El Salvador. Then the Salvadorian legislature says she gets special protection in our country. Yes, it might protect more than her, but she got special protection. And if I reconcile that with Acosta, she would get the protection, just like the former members of the El Salvador National Police in matter of Fuentes. They got the protection. The same kind of stuff was alleged there that's alleged here. So then if you're going to impose additional things on these people now, whether you do it by correcting or whether you do it by changing or whether you do it by simply coming along with different things, don't you have to give me some explanation so that I, sitting here, will know what to judge next? Or I should send it back to you and you should set it out. We believe that the need to look at society's perception has been recognized for some time in decisions of this Court, going back to Sanchez in the footnote 7 saying that the perception of the persecutor is relevant, in Gomez in the Second Circuit saying that the perception of the persecutor is relevant. CA refers to Gomez. There are distinct lines of cases running up to the BIA decision that say look at the social, whether or not there's a social group perceived in the society. And so I have a slight question that is a circle back to one that was asked at the beginning, but before your time is up, and that is what is the status of the Third Circuit case in the BIA, is the BIA in the process of seeking to explain its criteria? Your Honor, the time for further review in Valdiviezo has expired and no further review of that decision has been sought. That does not mean that the government agrees with that decision, but there are lots of considerations that go into deciding whether or not to seek further review. As far as what's happening at the Board, I don't know. The Board has many different options available to it. It may remand to the immigration judge. Further events may end up in the case being decided in a way that doesn't yield a precedential decision. They may decide the issue in another case. That often happens. So I don't know. Kennedy, just to make sure that I understood what you answered, Judge Graber, Valdiviezo went back to the BIA with a petition to review, granted, the service of the Board of Immigration Appeal the government has not sought in bank hearing. True? True. That case is over with. Petition was granted. Valdiviezo got asylum. True? No, I believe it's remanded for further consideration. It wasn't. Well, that's the question. Are they, the remand for further consideration, as I understand the Third Circuit's mandate was, explain what you have in mind? I can't remember the particular paragraph. I don't believe that they are directed to issue a decision in that particular case and publish. If they were directed to do that, then, of course, I'm sure that's what they did. I think the mandate was the petition granted and remanded for action consistent with his opinion. Yes, Your Honor. Not further consideration, which was the position of the concurrence in Valdiviezo. But the majority was petition granted, issue asylum. Well, I have to say that once the case leaves the court of appeals, it's within the Board of Immigration Appeals to decide what would be next. Well, can you tell us what do you know? I do not know. Can you find out? Yes, Your Honor. I could ask. I mean, it would be relevant. If the Board is busy cooking up an opinion in that case that is going to provide explanations relevant to this case, then maybe we need to hold off. How long would it take you to find out? I'm just not going to – I just don't know what your relationship is to the Board or whether you have to make a formal inquiry. What kind of time frame would you need to find out? Well, as I think about it, Your Honor, I mean, it's – the best way to approach the Board is to have the parties approach the Board. And when the parties ask the court, a court, what is it going to do, I think the courts are generally going to want answers. And the Justice Department, Attorney General, couldn't ask the Board what the status of the case is? That may be possible, Your Honor. They're the Attorney General's delegates, aren't they? Yes, Your Honor, they are. Okay. So you think Mr. Holder would be willing to oblige us? Yes, Your Honor. Thank you. So I'm just wondering how long would the process take? I mean, we don't want to sort of intrude when the Board processes. On the other hand, if they are busy providing stuff that's relevant, then it would be wise probably for us to wait and see what they have to say. Yes, Your Honor, I – Mr. Evans, can I read to you? For all of the above reasons, this is a valid yes or majority opinion, we will grant the Petitioner for review and remand to the BIA for proceedings consistent with his opinion. I don't think the BIA can be consistent with the opinion and hold social visibility and particularity are valid interpretations of the INA after this opinion, at least in the Third Circuit. I think that it may be a subject that's open to some debate, Your Honor. In any event, there will be further proceedings before the Board. Can I ask a somewhat related question? If we thought we needed further elucidation, could we remand for the Board specifically to write a presidential opinion on this as opposed to just to deal with it? Well, the agency, the Attorney General's delegate, separate branch of government, I think that it would be better to – I wasn't asking what was better. I was asking do we have the authority to do it. Do you know situations in which it's been done? The Second Circuit in Ucello, in the AME matter, was fairly specific about asking for further clarification from the Board. The Board published the CA case in response to that order, I believe, or at least the timing suggests that that happened, and then AME was published later. But as a matter of separation of powers, Your Honor, I think that directing an agency to issue a published opinion – What if we were to say that much along the lines of the Third Circuit, I'm not saying we would, but the Third Circuit could have said until the BIA articulates a response to our criticism, we will no longer consider ourselves bound by anything other than a constant. So it would be up to the BIA, then, to decide if it wanted to clarify or whatever, but have to revert back to a constant. Would that be within the separation of powers? As a matter of each circuit – I'm just asking could we do something like that and stay within the separation of powers concept? Well, I don't think it would be a separation of powers concept or issue, Your Honor. I think there's a separate issue about each circuit providing a forum in which to consider issues. The government is defending the Board's decision in this case. I'm just telling what the opinion says. So the BIA would, in the Ninth Circuit and of the Third Circuit, have that in mind as well. You'd have two circuits across the country which would say we're not recognizing the permutations post Acosta until the Board can explain it better, therefore Acosta is the default position. Well, that could be the result of a reasoned decision by the Ninth Circuit, but – and that's what we're asking for. And we believe that we're entitled to have the Petition for Review denied in this case. If the Court, after a reasoned analysis, concludes that it's inclined to agree with the Third Circuit, then I can see this Court saying, and for the same reasons as the Third Circuit, we will proceed as though Acosta is the only relevant standard. The Board has provided explanations for the actions in these four cases. Thank you, Your Honor. Let me take two minutes for rebuttal. Thank you, Your Honors. And I agree with Judge Smith. Two minutes, I said. I agree with Judge Smith. Two minutes. Our client, the Petitioner, in this case, satisfies the Acosta standard. And we also believe that our client satisfies the social visibility and particularity requirements, no matter how those requirements are used. And if this Court were to conclude that the BIA's requirements, the particularity and social visibility requirements are valid, then they should grant this – they should grant the Petition for Review because the Petitioner qualifies and satisfies those requirements. If the Court believes that the social visibility and particularity requirements are problematic or inconsistent, it should remand either for a reasoned explanation from the Board to explain those, just like the Third Circuit did, or for an application of the existing Acosta standard, which was pre-matter of CA. We believe that's the way to go forward in this case. Okay. Thank you. Thank you. Thank you. Okay. Just give us 10 minutes.
judges: Kozinski, Reinhardt, Graber, McKeown, Wardlaw, Fisher, Paez, Berzon, Bybee, Bea, Smith